UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

THAKUR P.B.,

        Petitioner,

    v.

RON MURRAY, et al.,

        Respondents.

No. 1:26-cv-00170-TLN-JDP

**ORDER**

This matter is before the Court on Petitioner Thakur P.B.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On January 13, 2026, the Court granted Petitioner's motion for a temporary restraining order ("TRO") and ordered his immediate release. (ECF No. 5.) The Court ordered Respondents to show cause why this Court should not issue a preliminary injunction requiring Respondent to continue to abide by this Court's TRO. (*Id.*) On January 17, 2026, Respondents filed a return to Petitioner's habeas petition/ opposition to Petitioner's motions for injunctive relief. (ECF No. 7.) On January 22, 2026, Petitioner filed a traverse. (ECF No. 8.) Both parties submit that if the Court is inclined to grant a preliminary injunction, judicial economy counsels that the Court should enter final judgment on the habeas petition. (ECF No. 7 at 2; ECF No. 8 at 2.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.)

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a 28-year-old native and citizen of Nepal.  (ECF No. 7 at 16.)  Petitioner entered the United States on September 4, 2024 without presenting himself for inspection or seeking admission.  (*Id.*)  A Customs Border Protection officer arrested Petitioner inside the United States and detained Petitioner.  (*Id.*)

On October 2, 2024, an immigration judge found Petitioner had established a reasonable probability of persecution or torture.  (*Id.* at 23–26.)  On November 6, 2024, United States Boder Patrol served Petitioner with a Notice to Appear and released him on parole.  (*Id.* at 16.)  Petitioner subsequently filed an application for asylum and withholding of removal.  (ECF No. 1 at 15.)

While his immigration petitions have been pending, Petitioner made visits with the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") regularly and as required.  (ECF No. 1 at 15.)  On November 6, 2025, Petitioner appeared for a routine appointment with ICE and was taken into custody that day.  (ECF No. 7 at 16.)

On January 9, 2026, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)  Petitioner challenges his detention as violating his due process rights.  (*Id.* at 16–17.)

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### a)  Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, the Court finds Petitioner has a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a

protected liberty interest under the Due Process Clause"). Petitioner was released on his own recognizance. (ECF No. 1 at 14.) Petitioner was out of custody for over a year, built a life in California, and complied with all his reporting obligations. (*Id.* at 15.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1) ("§ 1225(b)(1)") does not change this Court's analysis. (ECF No. 10 at 3–6.) Section 1225(b)(1) provides for expedited removal and mandatory detention of a category of noncitizens seeking asylum through the specific process outlined in the statute. The individuals covered by this section are defined as follows:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II). The statute explains when individuals who fall within this description are subject to mandatory detention: "If the officer determines at the time of the [asylum] interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *3 (N.D. Cal. Sept. 3, 2025) (describing the § 1225(b)(1) process).

Here, there is no evidence on the record to suggest Petitioner is a member of the group subject to § 1225(b)(1). Respondents submit no argument or evidence that an immigration officer made the requisite determinations for § 1225(b)(1) to apply to Petitioner. Rather, Respondents concede Petitioner was granted parole. (ECF No. 8 at 2.) Respondents' argument that Petitioner is subject to mandatory detention pursuant to § 1225(b)(1) thus fails and does not alter the Court's

4

finding that Petitioner has a protected liberty interest.

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor – Petitioner's private interest – Petitioner was out of custody for over a year.  The time Petitioner has spent in the United States, as well as his established relationships, create a powerful private interest in Petitioner's continued liberty.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the risk here be considerable.  The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  This is particularly so where, as here, Petitioner has no criminal history and has complied with the conditions of his release.  (ECF No. 1 at 15); *see R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible.  *R.D.T.M.*, 2025 WL 2686866 at *6.  Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the

government's interest is further diminished here where Petitioner was already found appropriate for release, has complied with the conditions of his release, and has no criminal history. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994.

The Court therefore finds Petitioner's re-detention without a hearing violates due process. The Court GRANTS Petitioner's petition for writ of habeas corpus. (ECF No. 1).

### IV.   CONCLUSION

IT IS HEREBY ORDERED:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) is GRANTED;

2. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondents show there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

3. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

6